UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES R. OLIVER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 3:23-cv-01513-GCS |
| GARY GERST, | ) ) ) |
| Defendant. | ) ) |

MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

INTRODUCTION AND BACKGROUND

Pending before the Court is Defendant Gerst's motion for summary judgment. (Doc. 55, 56, 61).[1] Plaintiff opposes the motion. (Doc.60). Based on the reasons delineated below, the Court **GRANTS** the motion for summary judgment.

Plaintiff Charles Oliver, an inmate currently incarcerated at Big Muddy River Correctional Center ("Big Muddy"), alleges that Defendant Gerst was deliberately indifferent to his serious medical need in failing to manage his diabetes medication and by denying him care for his reported symptoms of hypoglycemia. He seeks $7,500 for his

---

[1] Along with the motion for summary judgment, Defendant Gerst filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to a motion for summary judgment. (Doc. 57).

vision loss, transfer to another facility, and reinstatement of a snack permit from his previous facility.

Plaintiff alleges that on December 15, 2022, he saw Defendant P.A. Gary Gerst for the lab results concerning his diabetes. His A1c score was 6.2%. Gerst asked if Plaintiff was taking his Metformin and Gilizide as prescribed, and he confirmed that he been taking them. Gerst did not change Plaintiff's medications on this date, and in the following days Plaintiff had "a lot of trouble with high and low sugar spikes on his glucose levels." (Doc. 14, p. 4). On January 4, 2023, Plaintiff experienced symptoms of hypoglycemia around noon. He alleges that on this day he had run out of food from the commissary. Around 1 pm he alerted a non-party correctional officer to his medical condition, and the officer made a phone call.

Around 2 pm Plaintiff saw Defendant Gerst for a sick call slip, which Plaintiff believed to be related to his diabetes, but which turned out to be related to a tooth problem. Plaintiff reported his hypoglycemia problems to Gerst, and Gerst refused assistance because it was not the purpose of the encounter. Gerst instead told Plaintiff that it was not an emergency and that he should file a sick call slip. Plaintiff tried to insist that his symptoms were serious and that they were a listed side effect of his Metformin, but Gerst told him to raise his issue with the medical director. Plaintiff returned to his cell in severe distress with confusion, blurred vision, dizziness, and shakiness. His symptoms were partially abated when he ate dinner at 5 pm.

However, Plaintiff alleges that ever since the events of January 4, 2023, he has experienced vision problems, which he noticed because it became difficult for him to see

his television from his bunk. He put in a sick call slip and saw a non-party doctor about his eye issues in February of 2023. Plaintiff explained his hypoglycemia concerns to the doctor. The doctor informed him that unmanaged sugar levels can cause vision damage, and he prescribed Plaintiff new glasses.

On December 21, 2023, the Court conducted a threshold review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A. Plaintiff was allowed to proceed with an Eighth Amendment deliberate indifference claim against Defendant Gerst for failing to manage his diabetes via medication and by denying care for his reported symptoms of hypoglycemia. (Doc. 15).

Defendant Gerst maintains that he is entitled to summary judgment as Plaintiff cannot set forth any evidence that he was deliberately indifferent to Plaintiff's serious medical needs or that he suffered any substantial harm. Plaintiff counters that the evidence shows that Defendant Gerst was deliberately indifferent to his serious medical needs. Plaintiff asserts that he suffered unnecessary and wanton infliction of pain and suffering due to lack of treatment, and such pain and suffering could have been avoided had Defendant Gerst provided adequate and timely medical treatment.

## UNDISPUTED FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

During the relevant times alleged in the complaint, Plaintiff was housed in Big Muddy. Defendant Gary Gerst is employed as a Physician Assistant at Big Muddy.

Plainttiff is 57 years old and is prescribed metformin 500 mg and glipizide 2.5 mg for diabetes. Both medications list hypoglycemia as a possible side effect.

On December 15, 2022, Plaintiff was seen at the diabetic clinic, where his A1c was measured at 6.2%. Previously, Plaintiff's A1c was 8.5% on August 8, 2022. His vital signs were as follows: blood pressure - 143/84; temperature – 96.8; pulse – 83; respirations – 18; and oxygen saturation - 97%.

On December 25, 2022, Plaintiff submitted a nurse sick call reporting upper right tooth pain. Dental bleeding was observed, and Plaintiff noted his last dental examination occurred in August 2022. Ibuprofen was administered for the pain, and Plaintiff was advised to follow up with the next scheduled dental clinic appointment.

Plaintiff was scheduled to see the dentist on January 3, 2023. However, the visit was canceled due to COVID quarantine. Plaintiff complained of hot and cold tooth intolerance, difficulty chewing, fever, and chills. Due to Plaintiff's fever complaint, Plaintiff was scheduled to see the on-call provider, Defendant Gerst, within 24 hours.

The next day, Plaintiff began to experience shakiness, blurry vision, and anxiety around noon. Around 1 pm, Plaintiff notified an individual at Big Muddy, who is not a party to this case, about his symptoms. This person assured Plaintiff he would contact a doctor on his behalf. Subsequently, Plaintiff met with Defendant Gerst around 2 pm.

Plaintiff's medical records reveal that Defendant Gerst saw Plaintiff in 3-House for dental pain due to a COVID lockdown on January 4, 2023. According to the medical records, Plaintiff complained of left upper molar pain. Defendant Gerst prescribed amoxicillin, Tylenol, and a dental consult and instructed Plaintiff to follow up with the

dentist and nurse sick call. Vital signs recorded for this visit included blood pressure of 134/84; temperature of 96.5; pulse of 84; respirations at 16; and oxygen saturation of 96%. The medical record does not indicate that Defendant Gerst checked Plaintiff's blood glucose during this visit and does not indicate that Plaintiff complained of hypoglycemia symptoms.

On January 4, 2023, the Plaintiff submitted an "Individual in Custody Request" form, reporting episodes of "low sugar attacks." The form included a question: "Have you previously discussed this issue with a staff member?" with checkboxes for "yes" or "no," and space to identify the staff member if applicable. The Plaintiff did not respond to this question and left it blank.

On January 5, 2023, the Plaintiff submitted a nurse sick call slip, reporting episodes of low blood sugar in the afternoon. He requested an appointment to review his Metformin dosage and to discuss "adding an HS snack."

On January 18, 2023, Plaintiff saw Dr. Larson and informed him of his hypoglycemia attacks during the day and the vision issues. Dr. Larson removed Plaintiff's prescription for Glipizide , and the hypoglycemia attacks subsided.

Plaintiff saw Defendant Gerst on February 7, 2023, for complaints of high blood pressure. Defendant Gerst discussed diet and lifestyle modifications. The medical records do not indicate vision complaints.

On February 25, 2023, the Plaintiff was examined by the optometrist at Big Muddy. The optometrist documented that the Plaintiff had diabetes but exhibited no ocular

complications. Presbyopia was noted, and the Plaintiff expressed a preference for single-vision glasses specifically for watching television.

On April 26, 2023, Plaintiff was seen in the diabetic clinic. His A1c was 6.7% and diabetic outcome was listed as good.

Plaintiff was seen by the optometrist on February 10, 2024. The optometrist's assessment revealed no ocular complications from diabetes and noted presbyopia.

Plaintiff has no medical education or training other than expired firefighter II and Emergency Medical Technician Ambulance certificates. Plaintiff is also not a nurse or health care provider.

## LEGAL STANDARDS

### A.   Summary Judgment Standard

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(c); *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025) (citing *Anderson*, 477 U.S. at 255). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw

every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (internal citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted). *Accord Smith v. City of Janesville,* 40 F.4th 816, 821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (internal citation omitted). *See also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the

[summary judgment] motion." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (internal citation omitted).

**B.     Deliberate Indifference**

The Eighth Amendment prohibits cruel and unusual punishment, and the deliberate indifference to the "serious medical need[] of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457-458 (7th Cir. 2020) (citations omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm" — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

To prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *See Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (citations omitted).  The first consideration is whether the prisoner has an "objectively serious medical condition." *Johnson*, 5 F.4th at 824. *Accord Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (citations omitted). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Lockett v. Bonson*, 937 F.3d 1016, 1022-23 (7th Cir. 2019) (citations omitted). It is not necessary for such a medical condition to "be life-threatening to be serious; rather,

it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm") (internal quotation marks omitted).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *See Johnson*, 5 F.4th at 824. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Haywood v. Hathaway*, 842 F.3d 1026, 1031 (7th Cir. 2016) (citations omitted). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Lockett*, 937 F.3d at 1023. *See also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) (stating that "isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Eagan v. Dempsey*, 987 F.3d 667, 688 (7th Cir. 2021) (citations omitted). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (citing *Zaya v. Sood*, 836 F.3d 800, 805-806 (7th Cir. 2016)). This contrasts with a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did[.]" *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citations omitted). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment where the treatment is known to be ineffective but is chosen anyway. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). But where the evidence shows that a decision was based on medical judgment, a jury may not find deliberate indifference, even if other professionals would have handled the situation differently. *See Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241-243 (7th Cir. 2021).

### DISCUSSION

For the purposes of this motion and based on the record before the Court, the Court finds that Plaintiff's diabetes and his hypoglycemia constitute objectively serious medical needs. However, based on that same record and construing the evidence in the

light most favorable to Plaintiff, the Court finds that there is no evidence in the record to show that Defendant Gerst was deliberately indifferent to such needs.

Plaintiff maintains that he informed Defendant Gerst of his diabetes and hypoglycemia during the times he treated with him and that Defendant Gerst failed to make the proper notes in the medical records. Plaintiff further maintains that because Defendant Gerst was aware of his issues, Defendant Gerst should have been known that the medications he was on could have caused his symptoms and that Defendant Gerst should have changed the medications. Thus, according to Plaintiff, Defendant Gerst was deliberately indifferent to his medical needs. The Court rejects this argument.

The record does not reveal that Defendant Gerst ignored Plaintiff's medical needs. He saw Plaintiff: December 15, 2022, January 4, 2023, and February 7, 2023. During these visits, Defendant Gerst prescribed antibiotics and pain relief for dental issues and referred him for follow-up care. Although Plaintiff allegedly reported symptoms of hypoglycemia, there is no evidence that Defendant Gerst was aware of a substantial risk and consciously disregarded it. The medical records show that Plaintiff's A1c levels were improving, and that his diabetes was being monitored. While the record reflects that Plaintiff's symptoms improved after medication adjustments by Dr. Larson, this does not establish that Defendant Gerst knowingly disregarded a serious risk. There is no evidence of lasting injury or that Defendant Gerst's actions worsened Plaintiff's condition.

Plaintiff's dissatisfaction with the timing or nature of treatment does not rise to the level of deliberate indifference. The Court finds that Defendant Gerst's role in treating Plaintiff was too limited to support a finding of deliberate indifference. The medical

treatment simply was not the treatment Plaintiff wanted and/or demanded at that specific time. Nevertheless, the record reveals that Defendant Gerst provided appropriate and continued medical treatment to Plaintiff. Additionally, there is no evidence in the record, medical or otherwise, that Defendant Gerst's conduct in treating Plaintiff over the course of two months contributed to Plaintiff's vision problems. Plaintiff was seen by the optometrist in February 2023 and February 2024, who found no ocular complications related to diabetes. Plaintiff has failed to produce any evidence that could allow a reasonable jury to find in his favor.

## CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 55). The Court **FINDS** in favor of Defendant Gary Gerst and against Plaintiff Charles Oliver. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and close the case.

**IT IS SO ORDERED**.

**DATED: November 6, 2025.**

Digitally signed by Judge Sison
Date: 2025.11.06 14:57:08 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**